UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LIANA E.,

                           Plaintiff,

          v.

FRANK J. BISIGNANO,[1] Commissioner of
  Social Security,

                           Defendant.

_____

**DECISION
and
ORDER**

**23-CV-1172-LGF
(consent)**

APPEARANCES:        FREDERICK LAW OFFICES, PLLC
                             Attorneys for Plaintiff
                             SARAH A. FREDERICK, of Counsel
                             4467 S. Buffalo Street
                             Orchard Park, New York  14127

                             MICHAEL DiGIACOMO
                             UNITED STATES ATTORNEY
                             Attorney for Defendant
                             Federal Centre
                             138 Delaware Avenue
                             Buffalo, New York  14202
                                 and
                             PADMA GHATAGE
                             Special Assistant United States Attorney, of Counsel
                             Social Security Administration
                             Office of Program Litigation, Office 2
                             Office of General Counsel
                             6401 Security Boulevard
                             Baltimore, Maryland  21235

---

[1] Frank J. Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 2, 2025, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on June 28, 2024 (Dkt. 12), and by Defendant on September 26, 2024 (Dkt. 18).

## BACKGROUND

Plaintiff Liana E. ("Plaintiff"), brings this action under Titles II and Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on March 17, 2017, for Social Security Disability Insurance Benefits under Title II of the Act ("DIB"), AR[2] at 171-77, and Supplemental Security Income under Title XVI of the Act ("SSI"), AR at 165-70 (together, "disability benefits").  Plaintiff alleges she became disabled on October 1, 2015, based on herniated discs in her lower back, degenerative disc disease ("DDD") at L5-S1, and reflex sympathetic dystrophy syndrome ("RSDS").[3] AR at 158, 164, 182-83.  Plaintiff's applications initially were denied on May 4, 2017, AR at 64-87.

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on December 28, 2023 (Dkt. 5).

[3] "RSDS" is also referred to as complex regional pain syndrome ("CRPS").  "These terms are synonymous and are used to describe a unique clinical syndrome that may develop following trauma." Social Security Ruling 03-2p Titles II & XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Reg'l Pain Syndrome, (S.S.A. Oct. 20, 2003) ("SSR 03-2p").  Although both terms appear in the Administrative Record, and RSDS is sometimes shortened to "RSD," in the interest of consistency, the undersigned uses "RSDS" throughout this Decision and Order.

Plaintiff timely filed a request for an administrative hearing, AR at 108-09, which was held on January 23, 2019 ("first hearing"), via teleconference before Administrative Law Judge ("ALJ") Mary Sparks ("ALJ Sparks"), located in Albany, New York.  AR at 28-63.  Appearing and testifying at the first hearing were Plaintiff, represented by Felice Brodsky, Esq., and impartial vocational expert ("VE") Margaret Heck.  On May 1, 2019, ALJ Sparks issued a decision denying Plaintiff's claims, AR at 12-27 ("First ALJ Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 162-63.  On July 16, 2020, the Appeals Council denied Plaintiff's request to review the First ALJ Decision, rendering the First ALJ Decision the Commissioner's final decision at that time.  AR at 8-13.

On September 16, 2020, Plaintiff commenced an action in this court challenging the administrative denial of her disability benefits application.  *Liana E. v. Commissioner of Social Security*, 20-CV-1319-MJR (W.D.N.Y.) ("*Liana E.*").  On October 8, 2020, Plaintiff filed another application for SSI ("second SSI application") asserting a disability onset date of April 28, 2019.  AR at 895-97.  In connection with the second SSI application, Plaintiff listed her medical conditions as bipolar disorder, major depressive disorder, degenerative disc disease, cardiomyopathy, coronary artery disease, ventricular hypokinesis (generalized reduction in the heart's ability to pump thus reducing the ejection fraction), and RSDS in her left ankle.  AR at 898-905.

In a Decision and Order filed July 5, 2022 ("the D&O"), *Liana E. v. Comm'r of Soc. Sec.*, 20-CV-1319-MJR, Dkt. 28 (W.D.N.Y. July 5, 2022); 2022 WL 2437746 (W.D.N.Y. July 5, 2022); AR at 726-41,[4] United States Magistrate Judge Michael J.

---

[4] Subsequent references to "*Liana E.*" are to the Westlaw citation, and the Bates-stamped page in the administrative record.

Roemer ("Judge Roemer"), remanded the matter to the Commissioner for further administrative proceedings including reevaluating Plaintiff's RSDS according to Social Security Ruling ("SSR") 03-2p ("SSR 03-2p"),[5,6] *Liana E.*, 2022 WL 2437746, at * 5; AR at 737, as well as further development of the record addressing whether Plaintiff requires a sit/stand option and the amount of time Plaintiff can remain on task.[7]  *Liana E.*, 2022 WL 2437746, at * 7; AR at 741.

By Order dated October 20, 2022, the Appeals Council ("Appeals Council's order") vacated the First ALJ Decision and remanded the matter to the ALJ for further administrative proceedings consistent with the D&O including a new administrative hearing and taking any action necessary to complete the administrative record and issue a new decision in accordance with the D&O.  AR at 762-66 ("Remand Order"). The Appeals Council further directed that Plaintiff's second SSI application and its

---

[5] "SSR" is an acronym for "Social Security Ruling."  Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

[6] "RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. . . . The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma.  Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual."  SSR 03-2p; 2003 WL 22814447 at *1.  "When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment. It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present."  *Id.* at *4.

[7] Judge Roemer specifically found that because ALJ Sparks failed to reference any evidence in the record supporting the RFC's "sit/stand option" allowing Plaintiff to sit or stand at will provided Plaintiff was not off-task for more than 10% of the workday, this determination was not supported by substantial evidence in the record.  *Liana E.*, 2022 WL 2437746, at ** 6-7; AR at 737-41.

associated evidence be consolidated with the earlier applications filed March 17, 2017. AR at 764.

Accordingly, a second administrative hearing, was held on April 25, 2023, via teleconference, before ALJ Stephen Cordovani ("ALJ Cordovani" or "the ALJ") in Buffalo, New York.  AR at 638-87 ("second hearing").  Appearing and testifying at the second hearing were Plaintiff, represented by Nathaniel Yood, Esq., medical expert James Hayes, M.D. ("Dr. Hayes"), and VE Richard Oestrich ("VE Oestrich").  On August 30, 2023, ALJ Cordovani issued a decision denying Plaintiff's claims, AR at 608-37 ("Second ALJ Decision").  On November 10, 2023, Plaintiff commenced this action seeking review of the Second ALJ Decision denying Plaintiff disability benefits.

On June 28, 2024, Plaintiff moved for judgment on the pleadings (Dkt. 12) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 12-1) ("Plaintiff's Memorandum").  On September 26, 2024, Defendant moved for judgment on the pleadings (Dkt. 18) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 18-1) ("Defendant's Memorandum").  No further responses or replies were filed by Plaintiff or Defendant.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is REMANDED for calculation of benefits.

**FACTS**[8]

Plaintiff Liana E. ("Plaintiff"), born January 11, 1984, was 31 years old as of her alleged disability onset date ("DOD") of October 1, 2015, and 39 years old as of August 30, 2023, the date of the Second ALJ Decision.  AR at 158, 164, 179, 629.  Plaintiff lives in a house with her teenaged children.  AR at 200-01.  Plaintiff was in regular classes in school, did not graduate high school, but obtained a GED in 2002 and has not completed any specialized job training, trade, or vocational school.  AR at 184.  Plaintiff has a driver's license but only drives short distances and generally relies on rides from a friend.  AR at 203.  Plaintiff's past work includes as a cashier in a retail store, customer service at a fast food restaurant, housekeeper at a casino, and working in a manufacturing facility as a machine operator, inspector, and packager, but Plaintiff stopped working on October 1, 2013, because of her medical conditions.  AR at 183-84, 212-18.

In 2012, Plaintiff commenced receiving primary care at Mount St. Mary's Neighborhood Health Center ("NHC") where she sees primary care physician John Sauret, M.D. ("Dr. Sauret").  AR at 186, 341-90, 554-87, 1085-1125, 1328-81, 1384-1490.  On September 4, 2014, Plaintiff sought treatment in the Emergency Department ("Emergency Department") at Niagara Falls Memorial Medical Center ("NFMMC") for complaints of pain in her back, left hip, left leg and chest, attributed to an automobile accident on September 1, 2014.  AR at 278-80.  At that time, Plaintiff's past medical

---

[8] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.  Further, because Plaintiff does not challenge the disability determination based on her mental impairment, the court does not address the medical evidence pertaining to Plaintiff's mental impairment.

history listed a chronic left ankle injury, AR at 280, which Plaintiff attributes to a left ankle sprain in 2014.[9]  AR at 1074, 1133.

On January 13, 2015, Plaintiff was treated at NFMMC Emergency Department for complaints of left side back and left leg pain attributed to falling when Plaintiff's left leg "gave out."  AR at 298.  A May 13, 2015 MRI of Plaintiff's lumbar spine revealed a large central (slightly left) disc herniation at L5-S1 and minor annular bulging at L4-L5.  AR at 339.  On June 9, 2015, Dr. Sauret diagnosed Plaintiff with RSDS of the left lower extremity.  AR at 371-72.

On September 30, 2015, Plaintiff commenced treatment for her back pain at University at Buffalo Neurosurgery ("UBNS") where she saw neurosurgeon Gregory J. Castiglia, M.D. ("Dr. Castiglia"), who diagnosed lumbar radiculopathy and L5-S1 disk herniation.  AR at 393-97.  On November 3, 2015, Dr. Castiglia perform spinal surgery on Plaintiff consisting of left L5-S1 hemilaminectomy (to remove pressure from neural elements of the spine) and microdiscectomy (surgical removal of herniated disc) ("the back surgery").  AR at 253; 403.  Plaintiff did not experience any relief from the back surgery but, instead, reported increased back pain following the back surgery.  AR at 436.

Plaintiff attended physical therapy at Mount St. Mary's Hospital from March 13, 2017 to March 20, 2017, were she was treated by Physical Therapist ("PT") Kristin L. Barnard ("PT Barnard").  AR at 425-34.

---

[9] The precise date Plaintiff sprained her left ankle is not in the record, nor are there any contemporaneous medical treatment records for the asserted sprain.

On May 30, 2017, Plaintiff commenced treatment for her low back and RSDS of her left lower extremity with Mason Nurse Practitioners where she saw nurse practitioner and pain management specialist Veronica Mason ("N.P. Mason").  AR at 446-69.

Plaintiff has a genetic heart defect, biventricular noncompaction cardiomyopathy ("cardiomyopathy") (chambers on both sides of the heart do not pump enough blood), that was not detected until September 19, 2018, AR at 589-605, 1074, 1142, 1169, 1345, after she filed her disability benefits applications.  Plaintiff initially received treatment for her cardiomyopathy at Great Lakes Cardiovascular from cardiologist James Conley, M.D. ("Dr. Conley").  Plaintiff's LVEF (left ventricle ejection factor) has varied between 40% and 50% (less than 50% is considered below normal).  AR at 1092, 1169, 1434.

On February 12, 2019, Plaintiff established treatment for her low back and lower left extremity pain at Mount St. Mary's Hospital with neurologist Gregory D. Sambuchi, M.D. ("Dr. Sambuchi").  AR at 606-07.

On October 22, 2019, Plaintiff established treatment for her cardiomyopathy with cardiologist Benjamin G. Rueda, M.D. ("Dr. Rueda") at Mt. St. Mary's Hospital Cardiac Center.  AR at 1328-1381.

On October 21, 2020, Plaintiff resumed treatment at UBNS for lumbar and cervical spinal pain, seeing neurosurgeon Douglas B. Moreland, M.D. ("Dr. Moreland"), and Physician's Assistant ("PA") Carly Domes ("PA Domes").  AR at 1063-68.

In connection with her disability benefits applications, Plaintiff underwent several consultative physical evaluations.  On April 26, 2017, David Bauer, M.D. ("Dr. Bauer"),

performed an internal medicine examination and diagnosed chronic low back pain and left ankle RSDS.  AR at 436-40.  On January 4, 2021, John Schwab, D.O. ("Dr. Schwab") performed an internal medicine examination and diagnosed back ache radiating down Plaintiff's left extremity, RSDS of the left ankle, cardiomyopathy, and tobacco abuse.  AR at 1074-77.  On September 24, 2022, Plaintiff underwent another internal medicine examination by Dr. Schwab who diagnosed backache radiating to left lower extremity, history of congestive heart failure, RSDS of the left ankle and foot, and status post tobacco abuse.  AR at 1133-36.

On May 4, 2017, Plaintiff's medical records were reviewed by State agency medical consultant G. Feldman, M.D. ("Dr. Feldman"), who completed a Physical Residual Functional Capacity ("RFC") Assessment finding Plaintiff capable of performing work at the sedentary exertional level.  AR at 64-85.  On February 4, 2021, Plaintiff's medical records were reviewed by State agency medical consultant H. Miller, M.D. ("Dr. Miller"), who completed a Physical RFC Assessment finding Plaintiff capable of performing work at the sedentary exertional level.  AR at 711-25.  On October 19, 2022, Plaintiff's medical records underwent another review, this time by State agency medical consultant K. Waldman, M.D. ("Dr. Waldman"), who completed a Physical RFC Assessment that was consistent with sedentary work.  AR at 743-61.

Following remand from the Appeals Council, ALJ Cordovani arranged for James M. Haynes, M.D. ("Dr. Haynes"), as an impartial medical expert, to review Plaintiff's medical records and testify at the April 25, 2023 administrative second hearing as to the impact of Plaintiff's RSDS on her ability to perform physical work-related activities.  AR at 643-69.  Dr. Haynes testified that Plaintiff's medical records were devoid of any

evidence supporting the RSDS diagnosis, AR at 647, 650, and that Dr. Haynes was not familiar with SSR 03-2p.  AR at 657, 662.  Dr. Haynes further testified that he was not trained in cardiology and thus was unable to comment on Plaintiff's cardiomyopathy and its impact on Plaintiff's ability to perform work-related activities, AR at 645-46, 652, and attributed Plaintiff's ability to work to her motivation.  AR at 654.

In connection with the Remand Order, on March 6, 2023, ALJ Cordovani requested Dr. Sauret complete a Medical Statement of Ability to do Work-Related Activities (Physical).  Dr. Sauret did not complete the statement but, instead, on May 10, 2023, Dr. Sauret forwarded a Physical Residual Functional Capacity Assessment completed, upon referral by Dr. Sauret, on May 10, 2023 by Occupational Therapist Registered and Licensed ("OT/L"), and Certified Functional Capacity Evaluator ("CFCE") Diane Ralph ("OT Ralph") of NFMMC ("OT Ralph's RFC Assessment").  AR at 1471-90.  OT Ralph observed that during the assessment, Plaintiff sat for a total or 1 hour and 14 minutes, and stood for a total of 27 minutes, and was able to stand for 10 minutes before requiring a change.  AR at 1490.  In addition to explaining her findings regarding the various testing results, OT Ralph summarized the evaluation results including that Plaintiff "appeared to put forth her best effort in all tasks asked of her." AR at 1480.  OT Ralph observed Plaintiff ambulated with a left antalgic gait (limp), was unable to sit or stand for very long, Plaintiff sat with her weight on the right side to take pressure off her left side, and Plaintiff was anxious and fearful about performing tasks requiring bending or weight bearing on her left lower extremity.  *Id*.  As Plaintiff's pain increased, Plaintiff sweated and her arms and hands became hot and clammy.  *Id*. According to OT Ralph, Plaintiff "would be unable to successfully perform in a

competitive work environment due to her physical limitations, cardiovascular issues, pain and her bodies [*sic*] response to exertion (fatigue, palpitations and pain)."  *Id*.  OT Ralph continued that "non-material handling" tests revealed Plaintiff was limited to an occasional tolerance for pinching, simple grasping, and walking, and Plaintiff should avoid any competitive work environment requiring above shoulder reaching, dynamic balance, static balance, bending, forward reaching, firm grasping, repetitive or sustained kneeling, squatting, and stair climbing.  *Id*.


## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[10] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving DIB under Title II of the Act as for SSI benefits under Title XVI of the Act. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). The first step is to determine whether the

---

[10] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is

on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, ALJ Cordovani found that Plaintiff meets the SSA's insured status requirements through December 31, 2018, AR at 615, and Plaintiff has not engaged in substantial gainful activity ("SGA") since October 1, 2015, Plaintiff's alleged disability onset date.  *Id*.  The ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease of the low back, CRPS (includes both complex regional pain syndrome and reflex sympathetic dystrophy), biventricular non-compaction cardiomyopathy, chronic systolic heart failure, bipolar 1 disorder, depressive disorder, and posttraumatic stress disorder.  *Id*.  The ALJ further found that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 615-17.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a),[11] with additional limitations including that Plaintiff

---

[11] Relevantly,
Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a), § 416.967(a).

can lift, carry, push, pull 20 pounds occasionally and 10 pounds frequently; can sit for 6 hours, stand and walk 2-4 hours total with up to 1-2 hours at a time. Occasional ramps and stairs, occasional balance . . . occasional[ly][12] stoop[,] kneel[,] crouch[,] crawl, no ladders ropes scaffolds.  Can understand, remember and carry out simple instructions and tasks; can maintain attention and concentration and regular attendance at work for simple unskilled work; no supervisory duties, no strict production quotas as with assembly line work, occasional decision-making, occasional changes in work routine and settings; frequent interaction with supervisors, co-workers and the general public.

AR at 617-27.

The ALJ further found Plaintiff is unable to perform her past relevant work, AR at 627, yet Plaintiff, based on her age, high school education, work experience, and RFC, could perform work existing in significant numbers in the national economy including as a sealer, labeler, and sorter.  *Id*. at 627-28.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since October 1, 2015, when Plaintiff filed her application. *Id*. at 628-29.

### 3.    Analysis of Plaintiff's Arguments

In support of her motion, Plaintiff argues that remand is warranted because ALJ Cordovani failed to comply with the specific directions of the D&O and the Appeals Council's Remand Order that the Commissioner reevaluate Plaintiff's RSDS according to SSR 03-2p, including, if necessary, contacting Plaintiff's treating physicians to obtain specific opinions regarding the impact of RSDS on Plaintiff's ability to perform work activities by requesting an RFC assessment from Dr. Sauret, Plaintiff's treating physician, instead of Dr. Sambuchi, a neurologist who treated Plaintiff for RSDS, and improperly rejected the RFC assessment prepared by OT Ralph, and adopted the physical RFC opinion provided by Dr. Haynes despite Dr. Haynes's rejection of

---

[12] Unless otherwise indicated, bracketed material has been added.

Plaintiff's RSDS diagnosis and admitting that he did not consider Plaintiff's cardiac impairment.  Plaintiff's Memorandum at 25-31.[13]  Defendant argues ALJ Cordovani's finding that Plaintiff is not disabled is supported by substantial evidence in the record, Defendant's Memorandum at 4-5, and the ALJ complied with the Remand Order by properly evaluating Plaintiff's RSDS and cardiac impairments in assessing Plaintiff's RFC.  *Id*. at 5-16.  A thorough review of the Administrative Record establishes the Second ALJ Decision provided by ALJ Cordovani is not supported by substantial evidence in the record and the matter should be remanded for calculation of benefits.

ALJ Cordovani failed to comply with the D&O's and Remand Order's directives upon remand.  Although the ALJ found Plaintiff's RSDS was a severe impairment, AR at 615, by retaining a medical expert, Dr. Haynes, who was not only not familiar with SSR 03-2p, but who also disagreed with Plaintiff's diagnosis of RSDS, the medical expert's testimony and opinion could not assist the ALJ's consideration of the impact of Plaintiff's RSDS on her ability to perform work activities.  Dr. Haynes testified that Plaintiff's cardiomyopathy was "significant" based on a reported 40% ejection fraction, AR at 652, but was unwilling to opine as to whether Plaintiff's cardiomyopathy posed any functional limitation to Plaintiff's ability to perform work activities, choosing to leave such determination to "other experts," AR at 652, and continued that his findings assumed Plaintiff "had a normal heart . . . ."  AR at 652.  Dr. Haynes then provided an RFC assessment that was consistent with sedentary work including, *inter alia*, "sitting for six hours in a day," and "standing and walking for two to four hours in a day, and that would

---

[13] Plaintiff does not specifically challenge the ALJ's failure to "further develop the record to specifically address the sit/stand option as well as the amount of time that Plaintiff can remain on task over the course of a workday."  D&O, 2022 WL 2437746, at *7; AR at 741.

be one to two hours at a time." *Id*.  Dr. Haynes also testified he was not incorporating into the RFC assessment any limitations attributed to RSDS.  *Id*. at 653.  Dr. Haynes explained that he was rejecting Plaintiff's RSDS diagnosis because the medical records did not consistently show symptoms, *id*. at 656, despite SSR 03-2p's specific provision that within a claimant's treatment records, the signs and symptoms of RSDS "are not present continuously, or the signs may be present at one examination and may not appear at another.  Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present."  SSR 03-2p, 2003 WL 22814447, at *4.  Accordingly, Dr. Haynes's opinion did not satisfy the D&O's directive that the ALJ further develop the record to obtain an opinion of Plaintiff's RSDS on her ability to perform work-related activities.

ALJ Cordovani was also directed to "further develop the record to specifically address the sit/stand option as well as the amount of time that plaintiff can remain on task over the course of a workday."  D&O, 2022 WL 2437746, at *7; AR at 741.  ALJ Cordovani addressed "those limitations and concerns . . . by fashioning an [*sic*] residual functional capacity for the claimant that does not include such limits given the same are not supported by the evidence of record when viewed in conjunction with SSR 03-2p."  AR at 625.  The ALJ's failure to develop the record to address the sit/stand option and the amount of time Plaintiff can remain on task over the course of a workday was in violation of the law of the case doctrine.  *See Chantel P. v. Comm'r of Soc. Sec.*, 2025 WL 1570108, at * 5 (W.D.N.Y. June 3, 2025) (addressing the law of the case doctrine in the context of a Social Security action).  In particular, in a Social Security action, upon remand, the Commissioner is permitted "'to revisit any issues as long as the court has

not remanded the case with specific instructions or made findings of fact.'" *Id.* (quoting *Pavon v. Comm'r of Soc. Sec.*, 2020 WL 1131220, at * 4 (W.D.N.Y. Mar. 9, 2020). Here, because the D&O specifically directed the ALJ to consider the sit/stand option and the amount of time Plaintiff can remain on task over the course of a workday, the ALJ's failure to do so runs afoul of the law of the case doctrine.  Further, the ALJ admits he restricted his consideration of "those limitations and concerns" to Plaintiff's RSDS impairment, thereby ignoring the impact of Plaintiff's other severe impairments including, relevantly, her degenerative disc disease of the low back and cardiomyopathy.

Nor only did Dr. Haynes's opinion fail to satisfy the directive of the D&O and the Remand Order, but ALJ Cordovani also gave "little weight" to OT Ralph's RFC Assessment despite acknowledging the "apparent adoption" of the assessment by Dr. Sauret, Plaintiff's treating physician.  AR at 625.  Thus, the ALJ failed to develop the record to obtain a medical opinion regarding the effect of Plaintiff's RSDS on her ability to perform work activities, as well as to address Plaintiff's need for a sit/stand option and the amount of time that Plaintiff could remain on task over the course of a workday. This failure has led to a gap in the record for which the court ordinarily would remand for further development of the record.  *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.).  Here, however, remand should not be for further development of the record but, rather, for calculation of benefits.

Specifically, where "no useful purpose would be served ... by a remand", a court may remand for a calculation of benefits. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Hence, "[r]eversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability, and a remand for further evidentiary proceedings would serve no useful purpose." *Harry L. v. Commissioner of Social Security*, 2019 WL 3937224, *5 (N.D.N.Y. 2019), *report and recommendation adopted*, 2019 WL 3934952 (N.D.N.Y. 2019).

In particular, OT Ralph's RFC Assessment, as adopted by Dr. Sauret, is "persuasive proof of disability" such that remand for further development of the record would be futile because the assessment limits Plaintiff to sitting for no more than 4 hours and 7 minutes, AR at 1490, which equates to an RFC of less than sedentary exertion requiring the ability to sit for six hours in an 8-hour workday. *See* Social Security Ruling 83-10: Titles II and XVI: Determining Capability To Do Other Work – The Medical-Vocational Rules of Appendix 2, 1983 WL 31251 (S.S.A. Jan. 1, 1983) ("SSR 83-10), at * 5 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). *See also Rae L. v. Comm'r of Soc. Sec.*, 2025 WL 2611384, at *6 (W.D.N.Y. Sept. 10, 2025) ("Sedentary work, of course, requires a claimant to be able to sit for at least six hours in an eight-hour work day and may involve up to two hours of walking or standing." (citing 20 C.F.R. § 404.1567(a), and SSR 83-10)), and *April S. v. Comm'r of Soc. Sec.*, 2022 WL 4480172, at * 3 (WD.N.Y. Sept. 27, 2022) ("the ability to sit for at least '6 hours of an 8-hour workday' is

an essential function of sedentary work, this omission could be determinative of plaintiff's claim." (quoting SSR 83-10)).  Significantly, OT Ralph found that Plaintiff was unable to stand for more than 10 minutes at a time.  AR at 1490.  Accordingly, OT Ralph's RFC Assessment, if accepted, establishes that Plaintiff is unable to work at even a sedentary level of exertion.

Although OT Ralph is not an "acceptable medical source" as defined under 20 C.F.R. § 404.1527(c) (SSDI) and § 416.927(c) (SSI), whose opinions are ordinarily entitled to weight, for claims filed before March 27, 2017, as in the instant case, "the ALJ is required to evaluate every medical opinion in the record from acceptable medical sources, . . . as well as opinions from sources who are not acceptable medical sources or are nonmedical sources, and it may be appropriate to give more weight to the latter opinions depending on the particular facts of the case." *Kathleen R. v. Saul*, 2021 WL 671602, at *5 (W.D.N.Y. Feb. 22, 2021) (citing 20 C.F.R. § 416.927(c) and (f)).   As an occupational therapist, OT Ralph is a medical source whose opinions "'are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"  *Robert H. v. Comm'r of Soc. Sec.*, 2021 WL 763727, at * 4 (W.D.N.Y. Feb. 26, 2021) (quoting *Jill S.G. v. Comm'r of Soc. Sec.*, 2021 WL 492114, at *6 (W.D.N.Y. Feb. 10. 2021)).  *See also* Social Security Ruling 06-03p: <u>Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u> (S.S.A. Aug. 9, 2006) ("SSR 06–03p") ("medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and

evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under the rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). Relevantly, RFC evaluations by occupational therapists have been recognized to have "probative value." *See Christopher R. v. Comm'r of Soc. Sec.*, 222 WL 669168, at ** 5-6 (W.D.N.Y. Mar. 7, 2022) (affording residual functional capacity evaluation conducted by occupational therapist "probative value" despite not being rendered by an acceptable medical source).

Further, in this case, not only did Plaintiff's treating physician, Dr. Sauret, submit OT Ralph's RFC Assessment to the ALJ in response to the ALJ's March 6, 2023 request that Dr. Sauret complete a Medical Statement of Ability to do Work-Related Activities (Physical), but a plain reading of OT Ralph's RFC Assessment establishes the assessment was conducted by OT Ralph upon referral by Dr. Sauret. AR at 1480. This fact underscores that Dr. Sauret complied with ALJ Cordovani's request by specifically obtaining the RFC Assessment from OT Ralph. It is not unnoticed that the ALJ commented this scenario suggests Dr. Sauret's "apparent adoption" of OT Ralph's RFC Assessment. AR at 625. Because Dr. Sauret is Plaintiff's treating physician, and given that Plaintiff commenced this action on March 17, 2017, the so-called "treating physician rule" applies to OT Ralph's RFC Assessment.

Under the "treating physician rule," for disability benefits claims filed, like the instant claim, prior to March 27, 2017, an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and

severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted).  *See Genier v. Astrue*, 298 Fed.Appx. 105, 108 (2d Cir. 2008) ("If the treating physician's opinion is well-supported by other medical evidence, then it is given controlling weight." (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)(2))).  Where, however, an ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  The failure to provide good reasons for rejecting a treating physician's opinion is grounds for remand for calculation of benefits.  *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician opinion and we will continue remanding when we encounter opinions from ALJ's [*sic*] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").  Here, ALJ Corovani did not explain why he was rejecting OT Ralph's RFC Assessment, adopted by Dr. Sauret as his own medical opinion of Plaintiff's ability to do work-related activities, including that Plaintiff could sit for less than the six hours in an 8-hour day required for sedentary work.  Nevertheless, this determination is supported by

the medical evidence in the record showing Plaintiff repeatedly complained of an inability to sit since before filing for disability benefits.

Specifically, at a physical therapy session Plaintiff attended at Mt. St. Mary's Hospital on March 6, 2017, the physical therapist's objective observations included that Plaintiff had increasing low back pain when sitting, Plaintiff had "core weakness," and her functional status for sitting was "fair."  AR at 432.  Upon examination by Dr. Castiglia on March 27, 2017, Plaintiff complained of pain when sitting which Plaintiff attributed to the "incisional area in the left buttock" following the 2015 failed back surgery.  AR at 419.  In a Function Report-Adult Plaintiff completed on April1, 2017 in connection with her disability benefits applications, Plaintiff wrote that she can drive for no more than 15 minutes and only with her back supported by a towel.  AR at 203.  An October 16, 2018 clinical note prepared by pain management specialist N.P. Mason states Plaintiff reported having "a difficult time with prolonged sitting, standing and or walking."  AR at 457.  At the first administrative hearing held on January 23, 2019, Plaintiff testified that although she can drive, she drives only short distances because sitting too long in one position causes the pain in her foot and ankle to "flare-up."  AR at 52.  At the second administrative hearing held on April 25, 2023, Plaintiff, in response to the ALJ's questioning what difficulties Plaintiff has with sitting and standing, responded, "[w]hen I sit down, I cannot sit for a long time, to be quite honest with you, because it feels like my tailbone is creating another space in my butt.  And standing, I can stand for probably about 15, 20 minutes, before I have to - - my best position is like sitting on my side, but I have to rotate sides . . . ."  AR at 669.

Objective medical evidence in the administrative record, including diagnostic testing and physical examinations, is consistent with Plaintiff's back impairment and RSDS, both of which Plaintiff maintains contribute to her inability to sit.  For example, an MRI of Plaintiff's lumbar spine taken May 13, 2015, showed a large L5-S1 disc herniation slightly to the left side, and minor annular bulging at L4-L5.  AR at 339. Although an MRI taken November 19, 2016, showed "substantial and dramatic improvement of a prior large left paracentral disc protrusion noted on the past MRI study of May 13, 2015," *id*. at 223, yet an MRI of Plaintiff's lumbar spine taken four months later on March 4, 2017 was abnormal, "demonstrating a recurrent left paracentral disc protrusion at L5-S1, nearly reminiscent of the initial pathology identified on the preoperative study of 5/13/2015," and which was "a new observation compared to the most recent [MRI] exam of 11/19/2016."  AR at 420.  On December 27, 2016, Plaintiff went to the NFMMC emergency room complaining of left lower back pain and a possible cyst.  AR at 319.  Upon examination, Plaintiff had a positive sitting straight leg raise test on the left, was tender to palpation in the left paraspinal lumbar region and left iliac crest, had a palpable lumbar spasm, and a small mass painful to palpation.  *Id*. at 321. A CT scan of Plaintiff's lumbar spine taken December 27, 2016, showed at L5-S1 Plaintiff has "[m]arked disc space narrowing with broad-based disc bulge.  Post operative scarring noted involving the left aspect of the canal exerting mass effect on the thecal sac and existing left nerve root."  *Id*. at 322.

There also are numerous findings upon physical examinations that support Plaintiff's diagnosis of RSDS of her left lower extremity.  For example, on March 27, 2017, Dr. Castiglia treated Plaintiff for "intolerable" pain "in the low back and radiating

through the left lower extremity along the S1 dermatome,"[14] with "numbness and tingling of the left foot."  AR at 418.  Physical examination was remarkable for positive straight leg raising test on the left, some lower extremity weakness with dorsiflexion and plantar flexion due to pain, depressed left ankle jerk, and diminished sensation along the left L5 dermatome compared to the right.  *Id*. at 419.  On September 17, 2018, Plaintiff presented to NFMMC emergency department with complaints of "progressively worsening left ankle pain" which Plaintiff noticed after driving for 1 ½ hours.  AR at 542. Plaintiff described the pain as "a severe burning pressure at her ankle that become a short-lived 10/10 stabbing pain when initially bearing weight in it that radiates up her lower leg and tenses up her calf muscle which she has never experienced before."  *Id*. Plaintiff was also "concerned about a red patch spreading distally and proximally on her anterior left ankle," *id*., which was "warm to the touch" upon examination.  *Id*. at 544. On February 12, 2019, Plaintiff was treated by Dr. Sambuchi for intransigent back and lower left extremity pain, noting that Plaintiff's "history and physical [are] most consistent with a diagnosis of [RSDS] of the left lower extremity manifest as a neuropathic pain with allodynia [neurological condition where non-painful stimuli are perceived as producing intense pain], skin discoloration, sweating abnormality and swelling."  AR at 606.  Plaintiff's RSDS diagnosis was also confirmed at each of the three consultative Internal Medicine Evaluations.  *See* AR at 439 (Dr. Bauer on April 26, 2017); 1076 (Dr.

---

[14] "A dermatome is an area on your body that relies on a specific spinal nerve."  *See* What are Dermatomes?, *available at*: my.clevelandclinic.org/healthy/body/24379-dermatomes, *last visited* Jan. 28, 2026.  The dermatones at S1 to S2 correlate to "[t]he uppermost section of your buttocks (including the gluteal cleft, which it the uppermost area where your buttocks separate), the middle and outer sections of the back of your thighs and calf muscles, the outer side of your ankles, and your fourth and fifth toes."  *Id*. The L5 dermatome correlates to "[t]he kneecap and front of your lower leg, the inner sides of your calf muscles, and the inner front surface of your feet, including your big toe and second and third toes."  *Id*.

Schwab on January 4, 2021), and 1135 (Dr. Schwab on September 24, 2022).

Accordingly, there is substantial evidence in the record establishing that Plaintiff's

degenerative disc disease of her low back and RSDS of her left lower extremity

interfered with Plaintiff's ability to sit for at least six hours in an 8-hour workday.

Nor are ALJ Cordovani's other stated reasons for granting OT Ralph's RFC

Assessment "little weight," AR at 625, including that OT Ralph's determination that

during the assessment, Plaintiff "demonstrated occasional tolerance for pinching, simple

grasping and walking and that she should avoid . . . above shoulder reaching, dynamic

balance, static balance, bending, forward reaching, firm grasping, repetitive kneeling,

sustained kneeling, squatting and stair climbing," for which "there is insufficient objective

criteria in the record to support such extreme limitations," *id.*, consistent with the

evidence in the record.  In particular, on October 28, 2019, Plaintiff was examined at

Mount St. Mary's Hospital Emergency Department ("emergency room") for complaints of

a racing heart with pain radiating down her left arm, and was also noted to have a stiff

neck and swelling.  AR at 1169-70.  On February 25, 2020, Plaintiff again presented to

the emergency room complaining of chest pressure, left arm and neck discomfort.  AR

at 1179.  At an examination by PA Domes at UBNS on October 21, 2020, Plaintiff

reported that in addition to her low back pain, she has suffered posterior cervical spine

pain for the past year, with radicular pain into her left anterior shoulder, daily

suboccipital headaches, her left arm feels weak, and paresthesias (sensation of "pins

and needles" or tingling) into her left hand.  AR at 1063.  Upon physical examination,

Plaintiff was tender to palpate across the posterior cervical spine, with limited range of

motion of the cervical spine in all directions, and left-sided deltoid weakness at L4/L5.

*Id*. at 1064.  PA Domes's impression, which was affirmed by Dr. Moreland, was that

Plaintiff "continues to suffer from ongoing neck pain, upper extremity radiculopathy . . .

.").  *Id*.  On May 2, 2021, Plaintiff was seen in the emergency room for complaints of

pain in the left lower chest that radiated toward the left neck and shoulder.  AR at 1229.

On October 24, 2021, Plaintiff presented to the emergency room for evaluation of

headache and neck pain attributed to a closed head injury Plaintiff sustained when she

hit her head on a cabinet.  AR at 1287.  At that time, Plaintiff described left lateral neck

pain that radiated to her left upper arm, *id*., and "pain that goes into her left jaw, back of

neck, and arm," *id*. at 1292, with "tingling in neck and arm."  *Id*. at 1293.  Physical

examination in the emergency room confirmed "left lateral neck musculature tenderness

into left trapezius," *id*. at 1290, and Plaintiff was diagnosed with cervical muscle strain.

*Id*. at 1291.

Accordingly, OT Ralph's RFC Assessment of Plaintiff, prepared at the behest of

Plaintiff's treating physician, Dr. Sauret, and adopted by Dr. Suaret as evidenced by Dr.

Sauret's submission of the assessment in response to the ALJ's March 6, 2023 request

that Dr. Sauret complete a Medical Statement of Ability to do Work-Related Activities

(Physical), thus qualifies as the statement of Plaintiff's treating physician.  Because OT

Ralph's RFC Assessment, adopted by Plaintiff's treating physician, Dr. Sauret, is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2), it is entitled to controlling weight.  *Id*.  As such, remand

for further development of the record would serve no useful purpose, and the matter

instead is REMANDED for calculation of benefits.  *Parker*, 626 F.2d 235 (remand for

calculation of benefits is appropriate where remand for further development of the record would serve no useful purpose).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 12) is GRANTED; Defendant's Motion (Dkt. 18) is DENIED.  The matter is REMANDED to the Commissioner for calculation of benefits.  The Clerk of Court is DIRECTED to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    January 30, 2026
          Buffalo, New York